## UNITED STATES DISTRICT COURT
## FOR THE <u>DISTRICT OF NEW JERSEY</u>

-------------------------------------------------------------X

Karin Wolf, in propria persona;                           )
D and G (by mother and next friend Karin Wolf);           )
and on behalf of all others similarly situated,           )
    ACP 2312, P.O. Box 1110                               )
    Albany, NY 12201-1110                                 )
                                                               )
                Plaintiffs,                              )
        v.                                                 )
                                                                )
STATE OF NEW JERSEY,                                      )
    Serve On:                                             )
    Christopher S. Porrino                                )
    New Jersey Attorney General                          )
    Richard J. Hughes Justice Complex                    )
    25 Market Street                                     )
    Trenton, New Jersey 08625                            )
                                                                )
COUNTY OF BERGEN, NEW JERSEY                              )
    Serve On:                                             )
    Office of the County Counsel                         )
    One Bergen County Plaza, Room 580                    )
    Hackensack, NJ 07601-7076                            )
                                                               )
BERGEN COUNTY COURT                                      )
                                                               )
NEW JERSEYADMINISTRATIVE                                 )
OFFICE OF THE COURTS;                                    )
                                                               )
CHIEF JUSTICE STUART RABNER,                             )
<u>individually and</u> in his official capacity as           )
Chief Justice of the                                     )
New Jersey Supreme Court;                                )
                                                               )
JUDGE PETER DOYNE,                                       )
<u>individually and</u> in his official capacity as           )
Judge of the Bergen County Court                         )
                                                               )
JUDGE BONNIE J. MIZDOL,                                  )
<u>individually and</u> in her official capacity as           )
Judge of the Bergen County Court;                        )
                                                               )

<u>Case no.:</u>
2:2017-cv-02072-MCA-MAH

**AMENDED**
**STATEMENT OF CLAIM**
**FRCP 15A**

**JURY DEMAND**

1

JUDGE WILLIAM R. DELORENZO,                    )
individually and in his official capacity as    )
Judge of the Bergen County Court;               )
                                                )
JUDGE GERALD C. ESCALA,                        )
individually and in his official capacity as    )
Judge of the Bergen County Court;               )
                                                )
KATHY KATONA, ESQ.,                            )
individually and in her official capacity as    )
court mediator of the Bergen County Court;      )
                                                )
PETER VAN AULEN, ESQ.;                         )
                                                )
DR. JUDITH BROWN GREIF;                        )
                                                )
BERGEN FAMILY CENTER;                          )
                                                )
NORTHEAST NEW JERSEY                           )
LEGAL SERVICES;                                 )
                                                )
NEW JERSEY DEPARTMENT                          )
OF CHILDREN AND FAMILIES;                       )
                                                )
DIVISION OF CHILD PROTECTION                   )
AND PERMANENCY;                                 )
                                                )
FULL CIRCLE;                                    )
                                                )
WEST BERGEN MENTAL HEALTHCARE                  )
                                                )
BETH LAFORGIA                                   )
                                                )
          **Defendants.**                       )
---------------------------------------------------------------X

## **COMPLAINT**

1.   Plaintiff Karin Wolf alleges the following:

## **INTRODUCTION**

2.   Karin Wolf and her children D and G, each a qualified individual with a mental health

     disability, (collectively, "Plaintiffs"), bring this complaint against the above-named

2

Defendants State of New Jersey, et al. (collectively "Defendants"), who are public and/or
private entities. From 2010 – present, Defendants have regarded Plaintiffs as having a
mental impairment called "Parental Alienation Syndrome" and Ms. Wolf as also having
Bipolar Disorder; and discriminated against Plaintiffs according to these perceived
mental impairments. Defendants acted on assumptions and sex-based stereotypes about
Plaintiffs' disabilities; and failed to individually analyze what services and supports
would be appropriate considering those disabilities. Defendants refused to provide
appropriate individualized treatment and accommodations necessary to ensure that
Plaintiffs had full and equal opportunity to court proceedings to which Ms. Wolf's
parental rights and children's custody were at issue. Moreover, Defendants exploited
Plaintiffs' disabilities. As a result, Ms. Wolf was diagnosed with Post-Traumatic Stress
Disorder, which is a psychiatric injury and mental impairment, and Defendants exploited
that even further. Ms. Wolf also has lifelong, chronic Asthma, a physiological
impairment triggered by the PTSD. As a result of Defendants' discriminatory practices
and exploitation of Plaintiffs' disabilities, Ms. Wolf's parental rights were effectively
terminated, her children were segregated from her, and she was barred from contact with
them. For more than three years, the State of New Jersey and its agencies have denied
Ms. Wolf and her children D and G the opportunity to be a family and threatens to deny
them that opportunity permanently. Defendants' actions, inactions, and omissions here
violate Title II of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42
U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35; Title III of
the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12181 *et*

3

*seq.*, and its implementing regulation at 28 C.F.R. Part 36; and Section 504 of the

Rehabilitation Act, 29 U.S.C. § 794.

3.      Plaintiffs do not challenge or appeal a State court decision.

4.      This matter raises an issue of general public importance.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction of this action under 28 U.S.C. § 1331, and 42 U.S.C. §§

12133 and 12188. The Court may grant declaratory and other relief pursuant to 28

U.S.C. §§ 2201 and 2202. The Court may grant attorney's fees pursuant to 42 U.S.C. §

12205.

6.      The acts and omissions of Defendants giving rise to this action occurred in Richmond

County, NY; New York County, NY; Westchester County, NY; and Bergen County, NJ.

Plaintiffs have been situated and aggrieved in southern New York during a substantial

portion of the events giving rise to this action, including present unmitigated harm

occurring in New York County, NY; Westchester County, NY; and Bergen County, NJ,

making venue proper in the Eastern District of New York or the Southern District of New

York or this judicial district pursuant to 28 U.S.C. § 1391.

7.      Enforcement by the United States Attorney General is invoked pursuant to 42 U.S.C. §§

12133 and 12188.

## THE PARTIES

8.      The United States has an interest herein.

9.      Plaintiff, Karin Wolf, resides in the Southern District of New York, and is a participant of

the Address Confidentiality Program of the State of New York as a victim of domestic

violence, with a mailing address of ACP 2312, P.O. Box 1110, Albany, NY 12201-1110.

4

10.  Plaintiffs, D and G, are two minor individuals who are the children of Karin Wolf.

11.  Defendant, State of New Jersey, including its respective departments, agencies, and other
     instrumentalities, is a unit of government, is a "public entity" within the meaning of 42
     U.S.C. § 12131(1), and is subject to the ADA and its implementing regulation. It is
     responsible for the administration of the Judicial Branch of New Jersey. The State of
     New Jersey is a recipient of federal financial assistance. The State of New Jersey, et al.
     have no immunity pursuant to 42 U.S.C. § 12202.

12.  Defendant, Bergen County, including its respective departments, agencies, and other
     instrumentalities, is a unit of local government in the State of New Jersey, is a "public
     entity" within the meaning of 42 U.S.C. § 12131(1) and is subject to the ADA and its
     implementing regulation. It is a recipient of federal financial assistance.

13.  Defendant Bergen County Court has its principal offices in Bergen County,
     New Jersey at 10 Main Street, Hackensack, NJ 0760; and exercises jurisdiction of all
     civil matters filed in Bergen County, including family law and juvenile cases, and
     administers all these cases and the court's activities in these cases.

14.  Defendant, Administrative Office of the Courts, assists the Chief Justice, and Superior
     and Supreme Courts of New Jersey in their leadership role as the administrators and
     managers of New Jersey's judicial system, its courts, officers, and related offices and
     programs. It is a recipient of federal financial assistance. It is located at Richard J.
     Hughes Justice Complex, 25 Market St, Trenton, New Jersey 08625.

15.  Defendant, Chief Justice Stuart Rabner, is the Chief Justice of the New Jersey Supreme
     Court, located at Richard J. Hughes Justice Complex, 25 Market St, Trenton, New Jersey
     08625. He is being sued individually and in his official capacity.

5

16.    Defendant, Judge Peter Doyne, was the Administrative Judge of the Bergen County
       Court, 10 Main St, Hackensack, NJ 07601, at the time of the events complained of herein.
       He is being sued individually and in his official capacity.

17.    Defendant, Judge Bonnie J. Mizdol, was the Presiding Judge of the Family Division of
       the Bergen County Court at the time of the events complained of herein, and is now the
       Administrative Judge of the Bergen County Court. She is being sued individually and in
       her official capacity.

18.    Defendant, Judge William R. DeLorenzo, was a judge of the Family Division of the
       Bergen County Court at the time of the events complained of herein. He is being sued
       individually and in his official capacity.

19.    Defendant, Judge Gerald C. Escala, was a retired judge on recall at the Bergen County
       Court at the time of the events complained of herein.  He is being sued individually and
       in his official capacity.

20.    Defendant, Kathy Katona, Esq., is an attorney licensed by the Bar Association of State of
       New Jersey.  She was qualified by the Administrative Office of the Courts (AOC) as a
       mediator.  She was a family court mediator at the Bergen County Court at the time of the
       events complained of herein.  She is being sued individually and in her official capacity.

21.    Defendant, Peter Van Aulen, Esq., is an independent attorney, AOC mediator, and
       member of the NJ Bar Association and Bergen County Bar Association.  He is both a
       "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within
       the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing
       regulations.  He is a recipient of federal financial assistance.  He is located at 50 Market
       St., Saddle Brook, NJ 07663.  He is being sued in his official and private capacities.

22.   Defendant, Dr. Judith Brown Greif, DSW, LCSW, is an independent mental health
      provider licensed by the State of New Jersey and the State of New York, and doing
      business in New Jersey, New York, Pennsylvania, Massachusetts, Delaware,
      Connecticut, Virginia, and Minnesota. She provides training to legal and mental health
      professionals in and around the family courts. She is a "private entity" within the
      meaning of 42 U.S.C. § 12181 and its implementing regulation. She is a recipient of
      federal financial assistance. She is located at 163 Engle St., Englewood, NJ 07631.

23.   Defendant, Bergen Family Center, is a mental health provider licensed by the State of
      New Jersey, owned and operated by Bergen County. It is a recipient of federal financial
      assistance. It is located at 10 Banta Pl., # 2, Hackensack, NJ 07601.

24.   Defendant, Northeast New Jersey Legal Services ("NNJLS"), is a legal aid service in
      Bergen County. It is a "private entity" within the meaning of 42 U.S.C. § 12181 and its
      implementing regulation. It is a recipient of federal financial assistance. It is located at
      190 Moore St, Suite 100, Hackensack, NJ 07601.

25.   Defendant, New Jersey Department of Children and Families ("DCF"), is a New Jersey
      state agency responsible for DCP&P and the Division of Women (DOW). It is a
      recipient of federal financial assistance. It is located at 50 E State St., Trenton, NJ 08608.

26.   Defendant, Division of Child Protection and Permanency ("DCP&P"), Bergen County
      Office is New Jersey's child protection and child welfare agency within the Department
      of Children and Families. It is a recipient of federal financial assistance. It is located at
      240 Frisch Court, 2nd Floor, Paramus, NJ 07652.

27.   Defendant, Full Circle, is a mental health provider licensed by the State of New Jersey. It
      is a "private entity" within the meaning of 42 U.S.C. § 12181 and its implementing

7

regulation. It is a recipient of federal financial assistance. It is located at 408 Main St., #506, Boonton, NJ 07005.

28.    Defendant, West Bergen Mental Healthcare a/k/a West Bergen Counseling ("WBMH"), is a mental health provider licensed by the State of New Jersey. It is a "private entity" within the meaning of 42 U.S.C. § 12181 and its implementing regulation. It is a recipient of federal financial assistance. It is located at 120 Chestnut Street, Ridgewood, NJ 07450, with another location at 860 Wyckoff Avenue, Mahwah, NJ 07430.

29.    Beth LaForgia, LCSW, is a mental health counselor licensed by the State of New Jersey with her principal place of business at WBMH's location at 860 Wyckoff Avenue, Mahwah, NJ 07430.

### FACTS

30.    At all times herein, Plaintiff Karin Wolf is a female and biological mother of D and G.

31.    The United States Department of Health and Human Services (HHS) and the United States Department of Justice (DOJ) issued a technical assistance manual in August 2015, stating:

> "Title II of the ADA applies to the services, programs, and activities of all state and local governments throughout the United States, including child welfare agencies and court systems. The "services, programs, and activities" provided by public entities include, but are not limited to, investigations, assessments, provision of in-home services, removal of children from their homes, case planning and service planning, visitation, guardianship, adoption, foster care, and reunification services. "Services, programs, and activities" also extend to child welfare hearings, custody hearings, and proceedings to terminate parental rights."

8

32. In 2007, Ms. Wolf obtained a fault-based Judgment of Divorce (JOD) against her former husband, Edward Crane, on grounds of Extreme Cruelty, which is the New Jersey divorce statute for domestic violence grounds. The JOD incorporated a Property Settlement Agreement, Irrevocable Trust, and Consent Order with bargained-for terms, providing Ms. Wolf with child support, residential custody and joint legal custody of D and G.

33. For at least two years prior to the divorce, Ms. Wolf had been receiving medical treatment for domestic violence trauma. She continued treatment post-divorce.

34. Ms. Wolf's former husband continued to harass her and the children for years, culminating in extensive and abusive, post-JOD custody litigation filed by his attorney Peter Van Aulen, Esq. from 2010 - 2014, where he accused her and the children of having "Parental Alienation Syndrome" ("PAS"); and Ms. Wolf of having Bipolar Disorder, none of which they have.

35. By early 2011, Plaintiffs were living, working, and attending school in New York City.

36. In early 2011, Judge DeLorenzo allowed the post-JOD custody case to proceed based on the perceived existence of a mental impairment, namely "PAS," as a cause of action for removing child custody from Ms. Wolf. The court did not accordingly refer Ms. Wolf or the children to a disability accommodations coordinator.

37. Post-JOD custody litigation was active from 2010 - 2015. The main custody litigation, from 2011-2013, took a grueling 2 ½ years, despite NJ law that it be six months.

38. Defendants repeatedly dragged Ms. Wolf and the children from New York into New Jersey to intentionally discriminate against them based on "PAS."

39.    As a result, Ms. Wolf has been diagnosed several times with Post-Traumatic Stress (PTS)
       and Post-Traumatic Stress Disorder (PTSD) relating to domestic violence and legal abuse
       complained of herein.

40.    Ms. Wolf also has lifelong chronic Asthma that has been aggravated by the PTS(D). She
       has received treatment for both, accordingly.

41.    From 2010 - present, the Bergen County Court has regarded Plaintiffs as each having one
       or more mental health disabilities, mainly "PAS."

42.    Karin Wolf is a qualified individual with disabilities within the meaning of 42 U.S.C. §§
       12102 and 12131(2).

43.    D and G are qualified individuals with disabilities within the meaning of 42 U.S.C. §§
       12102 and 12131(2).

44.    "PAS" theory places a sex-based stereotype on women.

45.    According to the American Psychological Association (APA), there is no reliable
       empirical data to support the so-called phenomenon of ''Parental Alienation Syndrome.''
       This ''syndrome'' and similar ones are used almost exclusively against women.

46.    The APA has repeatedly rejected Richard Gardner's theory of "Parental Alienation
       Syndrome" for inclusion in the Diagnostic and Statistical Manual of Mental Disorders.

47.    The APA has also rejected attempts by Gardner's cult-like followers at rehashing and
       renaming "PAS" as "Parental Alienation Disorder" ("PAD").

48.    According to the U.S. Dept. of Justice, "PAS" does not hold up to *Daubert* and *Frye*
       criteria or evidentiary standards in court. (Saunders' report, 2012).

49.    According to the U.S. Dept. of Justice, gender bias against women in child custody
       proceedings is prevalent, especially where abuse is alleged (Saunders' report, 2012).

50.    The Association of Family and Conciliation Courts (AFCC) promotes the use of "PAS"
       and other mental health accusations against mothers and children in family courts.

51.    Richard Gardner, now deceased, fraternized with the Defendants in these organizations.

52.    Gardner was based in Bergen County, NJ and his discriminatory "PAS" theory has
       affected all women and children similarly situated to Ms. Wolf and D and G.

53.    Defendants have, at one time or another, been actively involved with the AFCC as
       members, board members, panel members, directors, lecturers, or through training, etc.

54.    During Plaintiffs' custody litigation, Judge DeLorenzo attended a training session given
       by Dr. Judith Brown Greif, on at least one occasion.

55.    During Plaintiffs' custody trial, Judge Escala and Dr. Greif stated in open court that they
       fraternized together as members of a board/panel, giving the appearance of impropriety.

56.    It is the policy of the State of New Jersey and its agencies to use "PAS" and other mental
       health accusations against women and children in family court proceedings.  This policy
       has a disparate impact that adversely affects women and children.

57.    The State of New Jersey, et al., failed to inform Ms. Wolf of their policy to give
       preferential treatment to fathers, and that they were acting out of financial motivation, to
       obtain professional fees and federal "access" grants via The Healthy Marriage and
       Responsible Fatherhood (HMRF) initiative.

58.    Because Defendants regarded Ms. Wolf as having of "PAS," the court was biased against
       her according to this sex-based stereotype.  As a result, Plaintiffs could not fully and
       equally participate in court proceedings; and Ms. Wolf's parental rights were effectively
       terminated.

59.     Defendants did not refer Plaintiffs to a disability accommodations coordinator at the
        courthouse or at any other location, during the pendency of the family court proceedings,
        nor offer accommodations to the Plaintiffs. As a result, Plaintiffs could not fully and
        equally participate in court proceedings.

60.     Defendants faked the existence of a mental health impairment, namely "PAS," as a cause
        of action for segregating Plaintiffs and effectively terminating Ms. Wolf's parental rights.

61.     Defendants stereotyped and stigmatized Ms. Wolf and repeatedly acted on assumptions
        about Ms. Wolf's "PAS" mental impairment.

62.     Defendants perpetuated the use of "PAS" as a real syndrome to prejudice Ms. Wolf and
        other women in the family courts.

63.     State and Federal laws such the Health Insurance Portability and Accountability Act of
        1996 (HIPAA) provide that an individual has the right to privacy and nondiscrimination,
        the right to choose and decline their own healthcare providers, the right to a trusting
        relationship with their mental healthcare providers, and the right to Informed Consent.

64.     Further, the Fourth Amendment protects the right to privacy, and the Fifth Amendment
        protects a person from being compelled to incriminate oneself.

65.     Defendants forced or coerced Plaintiffs into several evaluations where their mental health
        was questioned by providers Ms. Wolf did not choose and to whom she specifically
        objected in open court due to lack of trust.  Moreover, Plaintiffs mental health was
        discussed in open court.  This created a hostile environment for the Plaintiffs.

66.     In 2011 and 2012, Judge DeLorenzo ordered Plaintiffs into custody evaluations with Dr.
        Judith Brown Greif to assess "PAS."

67.     Ms. Wolf objected to the use of Dr. Greif in open court stating lack of trust.

68.   Dr. Greif was exclusively picked by Ms. Wolf's former husband and Peter Van Aulen.

69.   Defendants did not inform Ms. Wolf if Dr. Greif was vetted by the State of New Jersey to
      comply with anti-discrimination statutes.

70.   Peter Van Aulen, Esq. has a history of representing abusive men to harass their former
      domestic partners in court. Dr. Greif has a history of siding with whomever is paying
      her, usually men. The two have established a pattern and practice with each other to
      remove children from their mothers by using "PAS" accusations.

71.   Dr. Greif grilled Ms. Wolf and the children. Dr. Greif's report stated that Ms. Wolf and
      the children had mental health issues relating to "PAS," inter alia.

72.   In 2011 and 2012, Judge DeLorenzo also ordered Plaintiffs into custody evaluations with
      Bergen Family Center (BFC), run by the County of Bergen, to assess "PAS." The court
      ordered Ms. Wolf to pay approximately $2800 for the cost of the evaluator; and this was
      a forced and coerced contract.

73.   The Bergen County Court did not inform Ms. Wolf who the evaluator would be, nor if
      this court appointee was vetted by the State of New Jersey to comply with anti-
      discrimination statutes.

74.   Bergen Family Center (BFC) grilled Ms. Wolf and the children. BFC used Dr. Greif's
      report to formulate their report. BFC's report stated that Ms. Wolf and the children had
      mental health issues relating to "PAS," inter alia.

75.   From 2011 – 2013, both Dr. Greif and Bergen Family Center discussed Ms. Wolf's
      mental health with her therapist and medical records with her doctor, which in turn, they
      used against her and included in their written reports. These reports were provided to the
      Court and Ms. Wolf's former husband, and discussed in open court.

13

76. In total, Plaintiffs were forced into four (4) custody evaluations that put them in an inordinate amount of stress and violated their right to privacy.

77. Much of what is described in the reports is a proximate result of Ms. Wolf's PTS(D) disability from domestic violence and legal abuse; the children's reasonable fear of their abusive father after witnessing domestic violence; and the grilling by the evaluators for "PAS."

78. Throughout most of the custody proceedings, Ms. Wolf and the children were unrepresented because Ms. Wolf could not afford an attorney and the court refused to appoint one, even for the children to protect their interests.

79. From 2011 ~ 2014, Ms. Wolf applied to Northeast New Jersey Legal Services (NNJLS) multiple times for legal aid, informing them of the "PAS" accusations she was facing.

80. NNJLS denied Plaintiffs legal aid based on their citizenship in the State of New York.

81. NNJLS told Ms. Wolf that she was ineligible the minute she moved out of the State of New Jersey (which is unfair considering that the State of New Jersey was exercising jurisdiction over Plaintiffs under the UCCJEA).

82. NNJLS also denied Plaintiffs legal aid, when Ms. Wolf lived in Bergen County, stating that it does not get involved with child custody and child support litigation. However, it does assist and represent fathers in these matters, and accordingly receives federal funding via The Healthy Marriage and Responsible Fatherhood initiative.

83. For years, Ms. Wolf had no choice but to proceed unrepresented, and was unable to communicate effectively with the court due to her PTSD; history of domestic violence by her former husband; and the "PAS" bias against her and the children.

14

84.     After an exhaustive search, Ms. Wolf was able to hire Alexandra Stremler, Esq. to represent her at trial, whom the court dismissed literally 15 minutes before trial began.

85.     Ms. Stremler had at least three (3) ex-parte group communications with Peter Van Aulen, Esq., Judge Escala, and Judge Mizdol before she departed at trial on June 4, 2013.

86.     The court then forced Ms. Wolf to proceed unrepresented without her trial binders, etc. despite Ms. Wolf's objections, request for adjournment to find a new attorney and collect herself, and a verbal Affidavit of Prejudice on record.

87.     This incident triggered Ms. Wolf's PTSD and immediately manifested into physiological symptoms including nausea and nervous stomach. Ms. Wolf was visibly ill and under duress; had difficulty breathing and had to medicate herself with a rescue inhaler several times during the proceedings; was unable to cope and communicate effectively in court; and unable to fully understand the proceedings.

88.     Yet Judge Escala and Judge Mizdol demanded that Ms. Wolf proceed with the trial at that moment with no accommodations, and be subjected to examinations, cross-examinations, rebuttals, etc., all of which further triggered Ms. Wolf's PTSD and Asthma and was used against her in court by the Defendants.

89.     Moreover, Judge Escala was hostile and disrespectful towards Ms. Wolf during the proceedings.

90.     Judge Escala effectively terminated Ms. Wolf's parental rights on August 30, 2013; and destroyed her 2007 Property Settlement Agreement, based on Plaintiffs' disabilities.

91.     Defendants intentionally prolonged litigation and used Plaintiffs' disabilities and history of domestic violence to discriminate against and exploit Plaintiffs.

15

92. By way of example, the Bergen County Court repeatedly forced and coerced Ms. Wolf into mediation with her abusive former spouse from 2011 - 2013.

93. In the fall of 2013, the court-appointed mediator Defendant Kathy Katona denied Ms. Wolf's request for reasonable accommodations (i.e. that she bring an advocate with her to mediation and that mediation occur in separate rooms).

94. Instead, Ms. Katona stuck Ms. Wolf in a very small room within close proximity of Plaintiff's former husband, for multiple 3 - 3 ½ hour sessions, where Ms. Katona made the following inflammatory and damaging statements to Plaintiff:

    a. "You think you're going to negotiate with Osama Bin Laden?"

    b. "Pretend that he is an Afghani terrorist, holding a gun to your head, and you are lying on the floor, pleading for your life."

    c. "In the eyes of the court, you are no longer these children's mother."

    d. "You're nuts."

    e. "I'm not doing this again; you people are crazy."

95. The sessions were so abusive and damaging that Plaintiff sought emergency mental health treatment afterwards.

96. As a result, between mediation sessions, Ms. Wolf was diagnosed with Post Traumatic Syndrome caused by legal system failure to protect her and her children from domestic violence. Ms. Wolf informed the court of the diagnosis.

97. Defendant DCF is responsible for providing appropriate policies and training for DCP&P social workers to understand their obligation to ensure the civil rights of parents with disabilities. DCF is obligated to make reasonable modifications where necessary to avoid discrimination.

98.   From 2010 – 2014, Ms. Wolf made several complaints to DCP&P because the children
      were complaining of physical and psychological abuse by their father.

99.   On Dec. 10, 2013, while discussing Plaintiffs' case, DCP&P social worker Tara Horne
      told Ms. Wolf, "We believe in Parental Alienation Syndrome." This implied that
      DCP&P social workers were being trained to discriminate against women.

100.  DCP&P told Karin Wolf that it would be providing in-home family counseling services
      at her home and at her former husband's home through Full Circle.

101.  DCP&P did not inform Ms. Wolf if this mental health provider was vetted by the State of
      New Jersey to comply with anti-discrimination statutes.

102.  Services by Full Circle were never provided to Ms. Wolf. Their counselor only went to
      home of Ms. Wolf's former husband from about 2013- 2014.

103.  Ms. Wolf called Full Circle to ask why they had not yet contacted her, whereupon the
      counselor, Kristin Cirelli, told Ms. Wolf that DCP&P only hired them to provide services
      to "the father and the children."

104.  It appears DCF, DCP&P and Full Circle entered into contractual arrangements here to
      obtain federal "access" grants via The Healthy Marriage and Responsible Fatherhood
      initiative, and that that is why Ms. Wolf was excluded from participating in their
      programs and services.

105.  Ms. Cirelli denigrated Ms. Wolf to the children and told them their mother was not a
      victim of domestic violence, even though Ms. Wolf was living in a domestic violence
      shelter at that time.

106.  Ms. Wolf called DCP&P social worker Sandra Cruz to discuss the matter. Ms. Cruz
      refused to take or return her calls, which prompted Ms. Wolf to call her supervisor,

17

Debbie Gomez. Ms. Gomez refused to take the call and Ms. Wolf left a message stating that Ms. Cruz was avoiding her. Ms. Cruz then called Ms. Wolf and threatened to put her on supervised visitations. This was clearly retaliatory.

107. Also at this time, Ms. Wolf's former husband blocked her access to the children's pediatrician for a sick visit. The pediatrician's office informed Ms. Wolf that she was barred from bringing the children there. Ms. Wolf called DCP&P, who told her to bring her son to the ER, but failed to hold the father accountable for this medical neglect.

108. In further retaliation, DCP&P had ex-parte communications with the court to bar Ms. Wolf from contact with her children, which eventually happened.

109. Between 2013 - 2014, Judge Escala ordered Plaintiffs into psychological evaluations through DCP&P.

110. Prior to the evaluations Ms. Wolf asked DCP&P who the mental health evaluator/doctor would be. DCP&P refused to provide this information to her.

111. The court and DCP&P did not inform Ms. Wolf if these mental health providers were vetted by the State of New Jersey to comply with anti-discrimination statutes.

112. At that point, Ms. Wolf refused to go to the evaluations due to lack of trust in DCP&P.

113. In 2014, Ms. Wolf sent a comprehensive grievance letter to Administrative Judge Peter Doyne, Chief Justice Stuart Rabner, the AOC, and the NJ Attorney General, all of whom refused to provide remedy and uphold Plaintiffs' rights under the ADA.

114. Judge Escala retaliated against Ms. Wolf by barring Ms. Wolf from contact with her children, stating angrily in open court that he saw the letter.

115. Judge Escala said she could only see the children through DCP&P.

116.    DCP&P had ex-parte communications with the court saying they no longer wished to be
        involved with Ms. Wolf. Accordingly, without a hearing, the court issued an ex-parte
        order completely barring Ms. Wolf from contact with D and G.

117.    The children's schools and doctors subsequently denied Ms. Wolf access to the children's
        school and medical records based on the impression they were given by Edward Crane
        and DCP&P that Ms. Wolf no longer has parental rights. Moreover, this prevented Ms.
        Wolf from knowing that her daughter Plaintiff G, was diagnosed with scoliosis.

118.    In 2014, DCP&P hired Beth LaForgia of West Bergen Mental Healthcare in what appears
        to be an attempt to continue reprogramming Plaintiff children and discriminating against
        mother Karin Wolf.

119.    By way of example, on or around July 18, 2017, during the children's weekly therapy
        session, Beth LaForgia intentionally made the following false and discriminatory
        statement to Plaintiffs D and G, "Your mother has a mental illness. I've never met her,
        but I'm guessing it's Bipolar Disorder."

120.    Defendant LaForgia made this statement to Plaintiffs D and G immediately following a
        visit from DCP&P social worker Christine Calafiore; it appears Ms. LaForgia and Ms.
        Calafiore of DCP&P colluded here to retaliate and discriminate against Plaintiffs.

121.    Ms. LaForgia is a mandated reporter of child abuse, yet failed to report physical abuse
        against Plaintiff G, who has scoliosis, a physical impairment covered under the ADA.

122.    By way of example, knowing G has this condition, G's stepmother Luciana Coutinho-
        Crane physically assaulted Plaintiff G by grabbing her arm and jabbing her finger into
        G's back, abdomen, and ribs.

19

123. During this incident, Ms. Coutinho-Crane also told the child, "I can touch you wherever I want." Plaintiff G alleges that the comment had a sexual connotation to it.

124. Defendant LaForgia has repeatedly failed to report psychological abuse of Plaintiffs D and G by Edward Crane.

125. By way of example, on or around the week of August 6, 2017 (and on several previous occasions) Edward Crane told the children their mother was an "alienator" and showed Plaintiffs D and G sensitive family court documents, including child custody evaluations that are under a protective order issued by Defendant Judge William R. DeLorenzo.

126. Those documents are part of the "PAS" records mentioned herein.

127. Defendants DCP&P, WBMH, and Beth LaForgia failed to protect Plaintiffs D and G and failed to notify the Bergen County Family Court of the father's transgression.

128. Defendants DCP&P, WBMH, and Beth LaForgia failed to prevent physical and psychological abuse of Plaintiffs D and G by themselves, the father and stepmother.

129. Defendants DCP&P, WBMH, and Beth LaForgia psychologically abused Plaintiffs D and G; and discriminated against them and their mother, Plaintiff Karin Wolf.

130. Moreover, DCP&P interviewed Plaintiffs D and G several times over the past few months and failed to notify Plaintiff mother Karin Wolf of these incidents, and of Plaintiff children's express wishes that they go back to live with their mother Ms. Wolf.

131. The State and its agencies did not inform Ms. Wolf if WBMH and Beth LaForgia were vetted by the State of New Jersey to comply with anti-discrimination statutes.

132. The Bergen County Court, DCF and DCP&P did not provide Ms. Wolf a full and equal opportunity to benefit from its services in support of reunification with her children.

133.   The Bergen County Court, DCF and DCP&P are obligated to make reasonable efforts to
        maintain the family unit and to prevent the unnecessary removal of a child from his or her
        home. They did not make those efforts in regard to Plaintiffs.

134.   The State of New Jersey and its agencies are inaccessible to Plaintiff Karin Wolf.

135.   Because the Defendants exploited Plaintiffs' disabilities, it has rendered Karin Wolf's
        PTSD so severe that she does not trust them, has lost faith in the legal system, and cannot
        effectively communicate with them to retrieve and access her children.

136.   Ms. Wolf has experienced physiological impairments accompanying PTSD that
        negatively affect major life activities and bodily functions - significant loss of sleep,
        depression, anxiety, difficulty concentrating, and difficulty breathing, inter alia. Ms.
        Wolf has had to seek a significant amount of medical treatment to mitigate her condition
        (i.e. ER visits, therapy, medications).

137.   PTSD is not curable. The duration and manifestations of Ms. Wolf's PTSD are greater
        than six (6) months and are lifelong. Studies consistently show that individuals with
        PTSD have an increased risk of dying from coronary heart disease.

138.   Chronic Asthma is not curable. Ms. Wolf's condition is exacerbated by the PTSD.

139.   Defendants have failed to mitigate the ongoing harm complained of herein.

140.   Plaintiffs reserve the right to expand these proceedings.

## CAUSE OF ACTION

## COUNT I

## TITLES II AND III OF THE AMERICANS WITH DISABILITIES ACT

141.   The preceding paragraphs are re-alleged and reasserted as if fully set forth here.

142.   Karin Wolf is an individual with PTSD and chronic Asthma; and regarded by Defendants
       as an individual having "PAS" and Bipolar Disorder.  She required appropriate
       individualized treatment and accommodations necessary to ensure full and equal access
       to court proceedings concerning her parental rights and the custody of her minor children
       D and G; accordingly, she is a qualified individual with a disability as defined by 42
       U.S.C. §§ 12102 and 12131(2).  PTSD is listed under "predictable assessments" under
       the ADA and its implementing regulation.  Plaintiff's disabilities must be assessed
       without regard to mitigating measures.

143.   D and G are two minor children regarded by Defendants as individuals having "PAS."
       They required appropriate individualized treatment and accommodations necessary to
       ensure full and equal access to court proceedings concerning their custody and their
       mother's parental rights; accordingly, they are each a qualified individual with a
       disability as defined by 42 U.S.C. §§ 12102 and 12131(2).  Plaintiffs' disabilities must be
       assessed without regard to mitigating measures.

144.   Because the actions complained of herein occurred from 2010 – present, the greatly
       expanded definition of the ADA Amendments Act of 2008, Final Rule of 2016, and
       parallel State law changes apply.

145.   Ms. Wolf's PTSD and chronic Asthma disabilities fall under actual mental
       impairment/psychiatric injury and physiological impairment, which substantially limit
       one or more major life activities.  Ms. Wolf has records of such impairments.

146.   Plaintiffs' "PAS" and Bipolar Disorder disabilities fall under the greatly expanded
       *regarded as* prong of the ADA.  Ms. Wolf has court records of such perceived mental
       impairments.

147.  *Major life activities* and *substantial limitations* are to be construed as broadly as possible under the ADAAA and its implementing regulations.

148.  Under the ADAAA, "major life activities" include "major bodily functions."

149.  Plaintiffs do not have to identify any major life activity or bodily functions that are substantially limited, under the ADAAA and its implementing regulations, but have.

150.  Defendants have subjected Plaintiffs to an ongoing mental war zone from 2010 – present. The U.S. military does not send any personnel on a tour lasting over 278 days as it is found to cause harm.

151.  Each day that passes adds incremental harm. Ms. Wolf's PTSD cannot be treated until the ongoing trauma ends. A mitigating measure and remedy would require the restoration of Plaintiff children to Plaintiff mother, per enforcement of the JOD.

152.  Defendants have failed to mitigate the harm they have done to Plaintiffs.

153.  Unmitigated harm is a continuing cause of action.

154.  Ms. Wolf fighting for her children is a major life activity. It is unreasonable to expect Plaintiffs to be subject to the jurisdiction of the State of New Jersey under the UCCJEA or PKPA, and the State should cede to mitigate further harm.

155.  Defendants State of New Jersey, Bergen County, Bergen County Court, AOC, Judge Doyne, Judge Mizdol, Judge DeLorenzo, Judge Escala, Kathy Katona, Esq., Peter Van Aulen, Esq., DCF, DCP&P, and Bergen Family Center, are a government or a department, agency, or other instrumentality of a State or State government; accordingly, Defendants are public entities as defined in 42 U.S.C. § 12131(1).

156. Defendants Peter Van Aulen, Esq., Dr. Judith Brown Greif, NNJLS, and Full Circle, West Bergen Mental Healthcare, and Beth LaForgia are private entities within the meaning of 42 U.S.C. § 12181.

157. Defendants are subject to both Title II and Title III of the ADA because of contractual arrangements.

158. Title II of the ADA, 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

159. Title III of the ADA, 42 U.S.C. § 12182, provides that: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

160. Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(ii), provides that: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

161. Defendants removed Ms. Wolf's children from her custody and effectively terminated her parental rights based on regarding her as having "PAS" and the sex-based stereotype of that "mental impairment"; regarding her as having Bipolar Disorder; and based on Ms.

24

Wolf's PTSD and assumptions about this mental impairment. As a result, D and G have been discriminated against on the basis of their association with an individual with a disability.

162. Defendants have intentionally discriminated against Plaintiffs as qualified individuals with disabilities, on the basis and stereotypical assumptions of those disabilities, and through contractual arrangements, in the full and equal opportunity of their services, programs, activities, facilities, privileges, advantages, and accommodations, in violation of Title II of the ADA, as amended, 42 U.S.C. § 12131 *et seq.*, and its implementing regulation at 28 C.F.R. Parts 35; Title III of the ADA, as amended, 42 U.S.C. § 12181 *et seq.*, and its implementing regulation at 28 C.F.R. Parts 36, by, inter alia:

   a. denying Plaintiffs the opportunity to participate in or benefit from Defendants' services, programs, activities, facilities, privileges, advantages, and accommodations in violation of 28 C.F.R. § 35.130(b)(1)(i); and 28 C.F.R. §§ 36.201, 36.202, and 36.203.

   b. denying Plaintiffs an opportunity to participate in or benefit from Defendants' services, programs, activities, facilities, privileges, advantages, and accommodations that is not equal to that afforded to Ms. Wolf's former husband, in violation of 28 C.F.R. § 35.130(b)(1)(ii); and 28 C.F.R. §§ 36.201, 36.202;

   c. limiting Plaintiffs in the enjoyment of the rights, privileges, advantages, or opportunities enjoyed by Ms. Wolf's former husband, in violation of 28 C.F.R. § 35.130(b)(1)(vii); and 28 C.F.R. §§ 36.201, 36.202;

   d. utilizing criteria or methods of administration that had the effect of subjecting an individual with a disability to discrimination on the basis of disability or that have

the purpose or effect of defeating or substantially impairing accomplishment of the objectives of Defendants' services, programs, and activities with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3); and 28 C.F.R. §§ 36.301(a) and 36.204;

e.  selecting vendors, forcing/coercing Plaintiffs into, and entering into, contractual arrangements to be used to evaluate Plaintiffs' mental health that had the effect of excluding Plaintiffs from, denying them the benefits of, or otherwise subjecting them to discrimination and disparate treatment, or that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of Defendants' services, programs, and activities with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130 (b)(1)(v) and (b)(4); and 28 C.F.R. §§ 36.201, 36.202, and 36.203.

f.  failing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the Defendants can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity, in violation of 28 C.F.R. § 35.130(b)(7); and 28 C.F.R. § 36.302;

g.  failing to administer Defendants' services, programs, and activities in the most integrated setting appropriate to the needs of persons with disabilities, in violation of 28 C.F.R. § 35.130(d); and 28 CFR 36.203;

h.  failing to operate Defendants' services, programs, activities, and facilities so that, when viewed in its entirety, it is readily accessible to and usable by mothers and

26

their children, in the most integrated setting appropriate, in violation of 28 C.F.R. §§ 35.150 and 35.151; and 28 C.F.R. § 36.203;

i. refusing to offer and provide appropriate individualized treatment and accommodations necessary to ensure full and equal opportunity for Ms. Wolf and her children to participate in Defendants' programs, services, and activities;

j. stereotyping and stigmatizing Ms. Wolf and repeatedly acting on assumptions about Ms. Wolf's disabilities in violation of 28 C.F.R. § 35.130(h); and 28 C.F.R. § 36.301(b);

k. perpetuating the use of "Parental Alienation Syndrome" as a real syndrome to prejudice Ms. Wolf and other women in the family courts in violation of 28 C.F.R. § 35.130 (b)(1)(v); and 28 C.F.R. § 36.301;

l. excluding or otherwise denying equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association, in violation of 28 C.F.R. 35.130(g);

m. depriving the Plaintiffs of their honest services;

n. blocking representation by an attorney for Plaintiffs to protect their rights;

o. segregating Plaintiffs from each other based on disability;

p. effectively terminating Ms. Wolf's parental rights based on disability and sex;

q. retaliating against Plaintiffs in violation of 28 C.F.R. 35.134;

r. failing to mitigate the harm that continues through present.

163. As a result of Defendants actions and inactions, Ms. Wolf and her children D and G are persons aggrieved who have been injured and suffered pecuniary losses, emotional pain,

suffering, inconvenience, mental anguish, loss of enjoyment of life, and other
nonpecuniary losses.

## COUNT II

## SECTION 504 OF THE REHABILITATION ACT

164.    The preceding paragraphs are re-alleged and reasserted as if fully set forth here.

165.    Karin Wolf is an individual with PTSD and chronic Asthma; and regarded by Defendants
        as an individual having "PAS" and Bipolar Disorder. She required appropriate
        individualized treatment, accommodations, and full and equal access to court proceedings
        concerning her parental rights and the custody of her minor children D and G;
        accordingly, she is a qualified individual with a disability.

166.    D and G are two minor children regarded by Defendants as individuals having "PAS."
        They required appropriate individualized treatment, accommodations, and full and equal
        access to court proceedings concerning their custody and their mother's parental rights;
        accordingly, they are each a qualified individual with a disability.

167.    Defendants are recipients of federal financial assistance.

168.    The Healthy Marriage and Responsible Fatherhood (HMRF) initiative is a $150 million
        discretionary grant program originally authorized under the Deficit Reduction Act of
        2005 and reauthorized under the Claims Resolution Act of 2010.

169.    The State of New Jersey, et al, have a policy and *modus operandi* of discriminating
        against mothers, particularly single mothers and victims of domestic violence, in order to
        receive federal grants via The Healthy Marriage and Responsible Fatherhood (HMRF)
        initiative. Defendants pit Responsible Fatherhood against the Violence Against Women
        Act (VAWA) to generate a cyclical need for funding.

28

170. Defendants have a pattern and practice of using mental health accusations and discriminatory policies, namely "PAS," against mothers and children to achieve the goal of getting federal funding via HMRF.

171. Defendants here used Ms. Wolf's family to obtain federal "access" grants via Fatherhood funding to further discriminate against Ms. Wolf and her children. Defendants gave Ms. Wolf's former husband more access to the children to the extent where Ms. Wolf's access to the children was completely taken away based on her disabilities and sex-based stereotypes of those disabilities.

172. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that no qualified individual with a disability, solely by the reason of his or her disability, may "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

173. Defendants have discriminated intentionally against Plaintiffs by refusing appropriate individualized treatment and accommodations necessary to ensure full and equal opportunity for Plaintiffs to participate in Defendants' programs in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

174. As a result of Defendants' actions and inactions, Ms. Wolf and her children D and G are persons aggrieved who have been injured and suffered pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## Prayer for Relief

WHEREFORE, Plaintiffs demand judgment against Defendants for the following:

29

175.    Declare that Defendants have violated Title II of the ADA, 42 U.S.C. §12131 *et seq*., and its implementing regulation, 28 C.F.R. Part 35; Title III of the ADA, 42 U.S.C. §12181 *et seq*., and its implementing regulation, 28 C.F.R. Part 36; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

176.    Enjoin Defendants, their officers, agents and employees, and all other persons in active concert or participation with Defendants, as well as any successors or assigns, from engaging in discriminatory policies and practices against individuals based on their disabilities, and specifically from failing or refusing to take appropriate steps to ensure compliance with the requirements of Title II of the ADA, 42 U.S.C. § 12131 *et seq*., and its implementing regulations, 28 C.F.R. Part 35; Title III of the ADA, 42 U.S.C. § 12181 *et seq*., and its implementing regulations, 28 C.F.R. Part 36, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

177.    Order Defendants to modify their policies, practices, and procedures as necessary to bring them into compliance with Title II of the ADA, 42 U.S.C. § 12131 *et seq*., and its implementing regulations, 28 C.F.R. Part 35; Title III of the ADA, 42 U.S.C. § 12181 *et seq*., and its implementing regulations, 28 C.F.R. Part 36; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

178.    Order the Defendants, their agents and successors in office, and all persons acting in concert with the Defendants to promptly remedy the demonstrated violations of Title II of the ADA and its implementing regulation, and mitigate harm to Plaintiffs;

179.    Terminate Defendants' federal financial assistance;

180.    Assess a civil penalty against defendants as authorized by 42 U.S.C. § 12188(b)(2)(C) to vindicate the public interest;

181.    To reimburse Ms. Wolf for the expenses she incurred with Bergen Family Center;

182.    To award compensatory damages to Plaintiffs;

183.    To award punitive damages to Plaintiffs;

184.    To award Plaintiffs' attorney's fees and costs;

185.    Order such other appropriate relief as the interests of justice require.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable.

Respectfully submitted,

9/7/2017

Karin Wolf, in propria persona,                    Date
and a/n/f of D and G, and
on behalf of all others similarly situated
Mailing address (not physical address):
ACP 2312
P.O. Box 1110
Albany, NY 12201-1110
Phone: (201) 450-2192
Email: karinelenawolf@gmail.com