NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARIN WOLF,<br><br>*Plaintiff*,<br><br>v.<br><br>STATE OF NEW JERSEY, et al.,<br><br>*Defendants*. | Civil Action No. 17-2072<br><br>OPINION |

**ARLEO**, UNITED STATES DISTRICT JUDGE

**THIS MATTER** comes before the Court on seven separate motions brought by Defendants Peter Van Aulen, Esq. ("Van Aulen") [ECF No. 13]; Northeast New Jersey Legal Services ("NNJLS") [ECF No. 26]; County of Bergen, New Jersey ("Bergen County") [ECF No. 34]; the State of New Jersey ("State of New Jersey"), New Jersey Administrative Office of the Courts ("AOC"), Chief Justice Stuart Rabner, Judge Peter Doyne, Judge Bonnie J. Mizdol, Judge William R. DeLorenzo, Judge Gerald C. Escala, Kathy Katona, Esq., the New Jersey Department of Children and Families ("DCF"), the New Jersey Division of Child Protection and Permanency ("DCP&P"), the Bergen County Court (together, the "New Jersey Defendants") [ECF No. 46]; Dr. Judith Brown Greif ("Dr. Greif") [ECF No. 47]; the Bergen Family Center ("BFS") [ECF No. 50]; Elisabeth LaForgia, and West Bergen Mental Healthcare [ECF No. 52] (all together, "Defendants"), to dismiss pro se Plaintiff Karin Wolf's ("Plaintiff" or "Wolf") Amended Complaint, ECF No. 9, which she brings on behalf of herself and her two children, D and G (collectively, "the Children"). For the reasons set forth below, the seven unopposed motions to dismiss are **GRANTED.**

1

I.      Background

In these instant motions, Defendants ask the Court to dismiss what is Plaintiff's fourth separate legal action before this Court concerning her 2007 divorce and subsequent child custody proceedings in Bergen County Family Court ("the state custody proceedings"). On September 24, 2014, Plaintiff filed a complaint in Civil Action No. 14-5985 against, among others, the state judges, agencies, social workers, mediators, lawyers, and parties in that family court proceeding seeking, among other relief, to overturn the Bergen County Family Court's decision granting custody of the Children to her former husband, Edward Crane. The Court dismissed that action in Wolf v. Escala, et. al., No. 14-5985, 2015 WL 2403106 (D.N.J. May 20, 2015);[1] see also Dkt. No. 14-cv-5985 D.E. 81, 82). On July 6, 2015, Plaintiff filed an amended complaint in that action repleading all claims previously dismissed and pleading claims of sex-discrimination and violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Dkt. No. 14-cv-5985, D.E. 95. On October 1, 2015, Plaintiff filed a notice of intent to dismiss that complaint without prejudice, Dkt. No. 14-cv-5985, D.E. 116, and the Court granted that request on October 5, 2015. Dkt. No. 14-cv-5985, D.E. 117. On May 19, 2016, Plaintiff then filed a motion to disqualify the undersigned, to vacate all previous orders, and to reinstate the case. Dkt. No. 14-cv-5985, D.E. 120. The Court denied that motion on September 13, 2016. Dkt. No. 14-cv-5985, D.E. 138.

---

[1] Plaintiff sought monetary relief under 42 U.S.C. §§ 1983 and 1985 for denial of her First, Fourth, and Fourteenth Amendment rights, damages under the Racketeering and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68, an injunction declaring the custody proceedings void, and various other injunctive and declaratory relief. The Court dismissed Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6), the Rooker-Feldman Doctrine, the doctrine of sovereign immunity, the doctrines of judicial and quasi-judicial immunity, and the doctrine of standing, and declined to issue any injunctions.

In addition, Plaintiff filed two other actions in this District: Civil Action No. 16-0226 (Wolf v. Superior Court of New Jersey), in which Plaintiff sought a writ of mandamus to vacate the state court custody determination, and Civil Action No. 15-1711 (Wolf v. Crane), in which Plaintiff sought habeas corpus relief against her former husband. Both actions were dismissed.

The instant action was first filed on March 2, 2017 in the United States District Court, Southern District of New York. On March 23, 2017, the Southern District of New York transferred the case to the District of New Jersey. On September 8, 2017, Plaintiff filed the Amended Complaint that is the subject of these motions.

The instant Amended Complaint, filed against virtually all the same defendants as in Wolf v. Escala, seeks largely the same relief as did that previous action. In the instant action, Plaintiff again names as defendants essentially any person or entity with any conceivable connection to the state custody proceedings. Now Plaintiff alleges, this time under the ADA and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 et seq., that she was denied appropriate accommodations in the course of the state custody proceedings. The state custody proceedings are again at the heart of Plaintiff's Amended Complaint. As Plaintiff's 185-paragraph Amended Complaint is somewhat difficult to follow, the Court will refer to its Opinion in Wolf v. Escala in addition to the Amended Complaint to summarize the underlying facts in this matter, particularly as they pertain to the Defendants in this action.

**A. Custody Proceedings**

Plaintiff and her former husband, Edward Crane ("Mr. Crane"), were married in 2000 and divorced in 2007. Am. Compl. ¶ 32; Wolf v. Escala, at *1. They have two children together. Id. In 2010, Crane filed suit (through his attorney, Defendant Van Aulen), alleging that Plaintiff has bipolar disorder and "'Parental Alienation Syndrome' ('PAS')," which Plaintiff believes is a

3

medically unsupported theory that "places a sex-based stereotype on women." Am. Compl. ¶¶ 34, 44, 48, 56, 58, 60, 74; Wolf v. Escala, at *2. The subsequent proceedings resulted in the entry of a consent order, which included an agreement to use a parenting coordinator. Id. Soon after, Plaintiff moved to Staten Island, New York. Id.

Because Plaintiff moved out of New Jersey, Mr. Crane filed an order to show cause on February 1, 2011. Id. In response, Plaintiff cross-moved for various forms of relief, including:

> [F]or denial of [Mr. Crane's] motion in entirety, [Mr. Crane] to be held in contempt for breach of contract, child support, sole legal custody and anger management because [Mr. Crane] was harassing [Plaintiff], psychological evaluation of [Mr. Crane], contempt for obstructing use of parenting coordinator, relief from legal abuse, [Mr. Crane] to be deemed vexatious litigant, punitive damages, tax refunds, unreimbursed medical expenses, etc.

Id. Defendant Judge William R. DeLorenzo of the Bergen County Family Court issued an order on March 28, 2011 denying Plaintiff's application in its entirety. Id.; see also Am. Compl. ¶ 36. Plaintiff filed a motion in August 2012 seeking various orders from Judge DeLorenzo, who denied Plaintiff's requests on October 18, 2012, and granted Mr. Crane temporary custody of the Children on December 24, 2012. Wolf v. Escala, at *2. Judge DeLorenzo allegedly "ordered Plaintiffs into custody evaluations with [Defendant] Dr. Judith Brown Greif" and with the Bergen Family Center around this time. Am. Compl. ¶¶ 66, 72.

Shortly thereafter, the case was transferred to Defendant Judge Gerald C. Escala, apparently to preside over the custody trial between Plaintiff and Mr. Crane, which began on June 4, 2013. Wolf v. Escala, at *2; see also Am. Compl ¶¶ 55, 88. Plaintiff claims that Judge Escala dismissed Plaintiff's attorney, Alexandra Stremler, Esq., "literally 15 minutes before trial began"[2]

---

[2] In Wolf v. Escala, in which Plaintiff named Stremler as a defendant, Plaintiff alleged that Stremler "informed Plaintiff on the morning of June 4 that she was 'backing out of the trial.'" Wolf v. Escala, at *2 (citing Compl. ¶ 164).

after conferring with Stremler, Van Aulen, and Defendant Judge Bonnie J. Mizdol, the Presiding Judge for Bergen County Family Court.[3] Judge Escala allegedly then forced Plaintiff to proceed with the trial <u>pro se</u> and without an adjournment. Plaintiff alleges that this incident "triggered [her] PTSD[4] and immediately manifested into physiological symptoms including nausea and nervous stomach," that she "had difficulty breathing and had to medicate herself with a rescue inhaler several times during the proceedings,"[5] that she "was unable to cope and communicate effectively in court," and that she was "unable to fully understand the proceedings." Am. Compl. ¶ 87. She alleges that she was forced to "proceed with the trial at that moment with no accommodations . . . which further triggered [her] PTSD and Asthma." <u>Id.</u> ¶ 88. Ultimately, Plaintiff alleges that the proceeding before Judge Escala resulted in the termination of her parental rights on August 30, 2013 "based on Plaintiff's disabilities." <u>Id.</u> ¶ 90.

**B. Allegations Against the Defendants**

The Amended Complaint raises a litany of challenges to the state custody proceedings and to the conduct of individuals involved in those proceedings, many of which are duplicative of those raised in <u>Wolf v. Eacala</u>. Plaintiff accuses Van Aulen of having "a history of representing abusive men to harass their former domestic partners in court." Am. Compl. ¶ 70, see <u>Wolf v. Escala</u>, at *2-3. Plaintiff accuses the State of New Jersey and the judges involved in the state custody proceedings of bias against women. Specifically, she alleges that the State of New Jersey has a policy of "giv[ing] preferential treatment to fathers" in order to obtain federal grants "via The

---

[3] As the Court noted in <u>Wolf v. Escala</u>, Judge Mizdol's role in this matter is unclear from the Complaint, which contains no other specific factual allegations concerning Judge Mizdol.
[4] Plaintiff alleges she "has been diagnosed several times with Post-Traumatic Stress (PTS) and Post-Traumatic Stress Disorder (PTSD) relating to domestic violence and the legal abuse complained of herein." Am. Compl. ¶ 39.
[5] Plaintiff alleges she "has lifelong chronic Asthma that has been aggravated by the PTS(D)." Am. Compl. ¶ 40.

Healthy Marriage and Responsible Fatherhood (HMRF) initiative." Am. Compl. ¶ 57. She alleges that Judges DeLorenzo and Escala were "biased" against Plaintiff because they regarded her as having Parental Alienation Syndrome, which she claims "places a sex-based stereotype on women." Am. Compl. ¶¶ 44, 58.

Plaintiff accuses Judges DeLorenzo and Escala of improperly relying on psychological reports concluding that she and the Children suffer from Parental Alienation Syndrome. Am. Compl. ¶¶ 54-55, 70-76. She claims she was forced into four custody evaluations with Defendant Dr. Judith Brown Greif, a social worker and custody evaluator who testified during the custody trial on behalf of Mr. Crane, and with the Bergen Family Center. Id., see Wolf v. Escala, at *3. She claims that both evaluators "grilled" her and the Children, and concluded that she and the Children "had mental issues relating to [Parental Alienation Syndrome]."[6] Am. Compl. ¶¶ 71, 74; see Wolf v. Escala, at *3. She takes issue with the state court's reliance on Dr. Greif's report because she accuses Dr. Greif of having fraternized with Judges DeLorenzo and Escala and of having "a history of siding with whomever is paying her, usually men." Am. Compl. ¶¶ 54-55, 66-70, Wolf v. Escala, at *3. She takes issue with the state court's reliance on the Bergen Family Center report because she claims she was "forced and coerced" into those evaluations. Am. Comp. ¶ 72. Plaintiff also alleges that these evaluations placed "an inordinate amount of stress" on her and violated her "right to privacy." Id. ¶ 76. These allegations are largely duplicative of those made in Wolf v. Escala.

Plaintiff accuses Defendant Kathy Katona, a court-appointed mediator in Bergen County Family Court, of engaging in "abusive and damaging" mediation sessions and denying her

---

[6] In Wolf v. Escala, Plaintiff accused Judge Escala of failing to credit the opinion of Bergen Family Center over that of Dr. Greif. See Wolf v. Escala, at *3. Here, however, Plaintiff indicates that the two evaluators came to the same conclusion.

6

accommodations during mediation sessions in the fall of 2013. Am. Compl. ¶¶ 93-95, Wolf v. Escala, at *5. These allegations are largely duplicative of those made in Wolf v. Escala, in which Plaintiff accused Ms. Katona of intentional infliction of emotional distress. Wolf v. Escala, at •5. In the instant Amended Complaint, Plaintiff also claims that the sessions forced her to seek emergency mental health treatment afterwards. Am. Compl. ¶ 95.

Plaintiff lodges a series of allegations against Defendants DCF and DCP&P, a division within DCF. Plaintiff claims she made a several complaints to DCP&P to report alleged abuse by Crane. Id. ¶ 98; Wolf v. Escala, at *5. Eventually, Judge Escala intervened on December 10, 2013, admonished Plaintiff for calling the agency, and redirected the agency's involvement. Wolf v. Escala, at *5. Plaintiff alleges that the family's caseworker was indifferent to her complaints and "was trained to discriminate against women." Am. Compl. ¶ 99. The DCP&P case worker recommended family therapy provided by Full Circle. Id. ¶ 100. However, Plaintiff alleges services by Full Circle were only provided to Mr. Crane, and not to her. Id. ¶ 102. Plaintiff alleges that Kristin Cirelli, Full Circle's counselor, "denigrated" Plaintiff to the Children, and claims that when she tried to report Cirelli's conduct to DCP&P, the agency's social workers threatened to put Plaintiff on supervised visits if she continued to complain. Id. ¶¶ 105-106. Plaintiff alleges she was then ordered by Judge Escala to attend psychological evaluations through DCP&P but that she refused to attend "due to lack of trust in DCP&P." Id. ¶¶ 109, 112. Plaintiff also alleges that DCP&P held ex parte communications with the state court that resulted in an order barring Plaintiff from contact with the Children. Id. ¶ 116.

Plaintiff alleges that, in 2014, she "sent a comprehensive grievance letter" to Judge Peter Doyne of the Bergen County Superior Court, Chief Justice Stuart Rabner of the New Jersey Supreme Court, the Administrative Office of the Courts, and the New Jersey Attorney General

7

"implor[ing] [them] to take action against [Judge Escala]." Id. ¶ 113; Wolf v. Escala, at *4. Plaintiff claims they all "refused to provide a remedy and uphold Plaintiff's rights under the ADA." Am. Compl. ¶ 113.

In the instant action, Plaintiff also raises allegations against parties not named in Wolf v. Escala. Plaintiff accuses NNJLS, a private provider of legal services, of denying her legal aid during her state custody proceedings. Id. ¶¶ 79-82. And Plaintiff accuses West Bergen Mental Healthcare, a provider of mental healthcare services through DCP&P, and Elisabeth LaForgia, one of its employees, of engaging in "an attempt to continue reprogramming Plaintiff['s] children and discriminating against [Plaintiff]," and of failing to child abuse perpetuated by Mr. Crane and his family. Id. ¶¶ 118-24.

Ultimately, Plaintiff alleges that the Defendants collectively "exploited Plaintiff's disabilities," Am. Compl. ¶ 135, that they "stereotyped and stigmatized [Plaintiff] and repeatedly acted on assumptions about [Plaintiff's] 'PAS' mental impairment," id. ¶ 61, and that the failure to provide disability accommodations deprived her of the ability to "fully and equally participate in court proceedings." Id. ¶¶ 58-59.

**C. The Claims and Relief Sought**

Plaintiff's Amended Complaint, filed on September 8, 2017, contains only two counts: one under the ADA, id. ¶¶ 141-63, and the other under Section 504 of the Rehabilitation Act, id. ¶¶ 164-74. In Count One, Plaintiff alleges that she is "an individual with PTSD and chronic Asthma; and regarded by Defendants as an individual having 'PAS' and Bipolar Disorder." Id. ¶ 142. She alleges that she "required appropriate individualized treatment and accommodations necessary to ensure full and equal access to court proceedings concerning her parental rights and the custody of her minor children." Id. She alleges that "Defendants removed [her] children from her custody

8

and effectively terminated her parental rights based on regarding her as having 'PAS' and the sex-based stereotype of that 'mental impairment'; regarding her as having Bipolar Disorder; and based on [her] PTSD and assumptions about this mental impairment." Id. ¶ 161. She alleges that "Defendants have subjected [her] to an ongoing mental war zone from 2010 – present" Id. ¶ 150. Finally, she alleges that her disabilities have impaired her major life activities because "fighting for her children is a major life activity." Id. ¶ 154.

In Count Two, Plaintiff alleges that the State of New Jersey has "a policy and modus operandi of discriminating against mothers, particularly single mothers and victims of domestic violence, in order to receive federal grants via The Healthy Marriage and Responsible Fatherhood (HMRF) initiative." Id. ¶ 169. She alleges "Defendants have a pattern and practice of using mental health accusations and discriminatory policies, namely 'PAS,' against mothers and children to achieve the goal of getting federal funding via HMRF." Id. ¶ 170. She alleges Defendants used her family to obtain access to federal grants and alleges that her "access to the children was completely taken away based on her disabilities and sex-based stereotypes of those disabilities." Id. ¶ 171. She alleges "Defendants have discriminated intentionally against [her] by refusing appropriate individualized treatment and accommodations necessary to ensure full and equal opportunity for [her] to participate in Defendants' programs in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794." Id. ¶ 173.

Plaintiff seeks declaratory and injunctive relief, including an order that Defendants "promptly remedy the demonstrated violations," id. ¶ 178, and the imposition of civil penalties and monetary damages. Id. ¶¶ 180-183. Plaintiff also seeks the "[t]erminat[ion of] Defendants' federal financial assistance," id. ¶ 179, and costs associated with this action. Id. ¶ 184.

**II.    Legal Standard**

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the . . . the claim is and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal quotations omitted). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Because Plaintiff is proceeding pro se, the Court construes the pleadings liberally and holds them to a less stringent standard than those filed by attorneys. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the "Court need not . . . credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" D'Agostino v. CECOM RDEC, No. 10-4558, 2010 WL 3719623, at *1 (D.N.J. Sept. 10, 2010). The Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." Baraka v. McGreevey, 481 F.3d 187, 211 (3d Cir. 2007). Legal conclusions couched as factual allegations and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice"

to prevent a motion to dismiss. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 555).

**III.     Analysis**

**A. Failure to Comply with Rule 8(a)**

As an initial matter, as in Wolf v. Escala, the Court finds that Plaintiff's Amended Complaint fails to comply with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." While Plaintiff's 31-page, 185-paragraph Amended Complaint is shorter than that in Wolf v. Escala, which was 120 pages and 396 paragraphs, the instant Amended Complaint contains lengthy statements that are irrelevant to Plaintiff's claims or that consist of bald legal conclusions. See Wolf v. Escala, at *8. For example, Plaintiff states "[f]or more than three years, the State of New Jersey and its agencies have denied Ms. Wolf and her children D and G the opportunity to be a family," Am. Compl. ¶ 2 and accuses the State of New Jersey of engaging in a "pattern and practice of using mental health accusations and discriminatory policies, namely 'PAS,' against mothers and children to achieve the goal of getting federal funding." Id. ¶ 170. Moreover, as in Wolf v. Escala, Plaintiff largely fails to make any specific allegations against many of the defendants, or to demonstrate an entitlement to relief against any of the defendants. See Wolf v. Escala, at *7. Therefore, the Court would be justified in dismissing the Amended Complaint as to all Defendants for failure to comply with Rule 8(a). See id. As in Wolf v. Escala, however, the Court will not dismiss the Complaint solely because of the failure to comply with Rule 8(a). See Howe v. Litwack, No. 12-4480, 2013 WL 3305994, at *6 (D.N.J. June 30, 2013) (finding that the complaint failed to comply with Rule 8(a) but reviewing the sufficiency of the complaint on other grounds).

**B. As a Non-Lawyer Pro Se Plaintiff, Ms. Wolf May Not Represent Her Children**

As the Court noted in Wolf v. Escala, it is well-settled law that Plaintiff is "not entitled to play the role of attorney for [her] children in federal court." Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pa., 937 F.2d 876, 882 (3d Cir. 1991); see also Wolf v. Escala, at *8. Therefore, the relief sought in the Complaint is barred insofar as it is sought on behalf of D and G.

**C. Plaintiff's Claims Are Time-Barred**

In New Jersey, the applicable statute of limitations for all "actions for injury to persons by wrongful action" is two years. N.J.S.A. § 2A:14-2. This limitations period applies to actions brought under the ADA and under Section 504 of the Rehabilitation Act. See Burkhart v. Widener Univ., Inc., 70 F. App'x 52, 53 (3d Cir. 2003) (applying the state two-year statute of limitations to an action brought under the ADA because "the ADA does not contain a statute of limitations"); DiFrancesco v. Aramark Corp., 169 F. App'x 127, 129 (3d Cir. 2006) (applying the state two-year statute of limitations to an action brought under Section 504 of the Rehabilitation Act).[7]

As a general rule, a "statute of limitations begins to run as soon as a right to institute and maintain suit arises." Burkhart, 70 F. App'x at 53. "In a discrimination case, the focus is on when the discriminatory act occurs, not when the consequences of that act become painful." Id. (citing Chardon v. Fernandez, 454 U.S. 6, 8 (1981)). In her Amended Complaint, Plaintiff fails to allege any conduct by any defendant within two years of the initiation of the instant suit.

This action stems from Plaintiff's 2007 divorce and ensuing state custody proceedings. Am. Compl. ¶ 32; Wolf v. Escala, at *1. Plaintiff alleges that, from 2010 through 2014, Mr. Crane, through Van Aulen, "continued to harass her and the children" through "extensive and abusive,

---

[7] To the extent that Plaintiff intended to plead claims under 42 U.S.C. § 1983 alleging violations of her Fourth and Fifth Amendment rights, Am. Compl. ¶ 64, those claims are also barred by the two-year statute of limitations. See O'Connor v. City of Newark, 440 F.3d 125, 126–27 (3d Cir. 2006).

12

post-JOD custody litigation" in which "he accused her and the children of having 'Parental Alienation Syndrome' ('PAS'); and Ms. Wolf of having Bipolar Disorder, none of which they have." Am. Compl. ¶ 34. Plaintiff alleges that the "main custody litigation, from 2011-2013, took a grueling 2 ½ years, despite NJ law that it be six months." Id. ¶ 36. Plaintiff states that the "post-JOD custody litigation was active from 2010 – 2015," id., but pleads no factual allegations against any of the Defendants concerning conduct more recent than that occurring in 2014.[8]

She alleges that "from 2010 – present, the Bergen County Court has regarded Plaintiffs as each having one or more mental health disabilities, mainly 'PAS,'" but pleads no facts to support this claim. Id. ¶ 41. In fact, her only allegation as to the Bergen County Court refers to conduct "from 2011-2013." Id. ¶ 92. Her most recent allegations concerning the County of Bergen refer to conduct "in 2011 and 2012." Id. ¶ 72. Her most recent allegations concerning Judge DeLorenzo refer to conduct from "2013-2014." Id. ¶ 109. Her most recent allegations concerning Judge Escala and Judge Mizdol refer to conduct in 2013. Id. ¶ 85. Her most recent allegations concerning Dr. Grief and the Bergen Family Center refer to conduct from "2011-2013." Id. ¶ 75. Her most recent allegations concerning NNJLS refer to conduct from "2011-2014." Id. ¶ 79. Her most recent allegations concerning Ms. Katona refer to conduct in "the fall of 2013." Id. ¶ 93. Her most recent allegations concerning Van Aulen, DCF, DCP&P, Full Circle,[9] West Bergen Mental Healthcare, LaForgia,[10] Judge Doyne, Chief Justice Rabner, and the AOC refer to conduct in 2014. Id. ¶¶ 34,

---

[8] Plaintiff makes a stray reference to a remark by Defendant Elisabeth LaForgia on or around July 18, 2017, see Am. Compl. ¶ 119, but this allegation has no bearing on the substantive claims in this action.

[9] Defendant Full Circle was unable to be served in this action as the United States Marshal Service could not locate it. ECF No. 18. Full Circle has not appeared in this action. Nevertheless, the Court will sua sponte exercise its discretion to dismiss both counts against Full Circle on statute of limitations grounds.

[10] See supra note 8.

13

98, 113, 118. And Plaintiff pleads no claims within the applicable statute of limitations as to the State of New Jersey. See id. ¶¶ 2, 56-57, 134. As Plaintiff's allegations fall outside the applicable statute of limitations, both counts are dismissed in their entirety as to all Defendants.[11]

### IV. Conclusion

For the reasons stated above, Defendants' motions to dismiss, ECF Nos. 13, 26, 34, 46, 47, 50, and 52 are **GRANTED**. As Plaintiff's claims are time-barred, it would be futile to allow her to re-plead.[12] The Amended Complaint is therefore **DISMISSED with prejudice**. This case is hereby closed. An appropriate order accompanies this opinion.

**Dated: April 23, 2018**

                                                          */s Madeline Cox Arleo*
                                                          **Hon. Madeline Cox Arleo**
                                                          **United States District Judge**

---

[11] To the extent Plaintiff intended to plead a claim under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d-1 et seq., that claim cannot go forward as HIPAA creates no private federal remedy. See Henderson v. Borough of Baldwin, No. 15-1011, 2016 WL 5106945, at *6 (W.D.Pa. Sept. 20, 2016) ("Although [the] Court of Appeals for the Third Circuit has not addressed this issue, every other federal court to address it has determined that there is no private right of action under HIPAA."); Marley v. Donahue, 133 F. Supp. 3d 706, 718 (D.N.J. 2015) (citing Newsuan v. Colon, No. 13-1199, 2013 WL 3989076, at *3 (E.D.Pa. Aug. 5, 2013); Hove v. Cleary, No. 10-1876, 2011 WL 2223760, at *6 (D.N.J. June 6, 2011)).

[12] Even if Plaintiff's claims were not time-barred, the Court would find that they are barred by the Entire Controversy Doctrine, which "compels the parties, when possible, to bring all claims relevant to the underlying controversy in one legal action." Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp., 446 F App'x 469, 471 (3d Cir. 2011) (citing N.J. Ct. R. 4:30A). As Plaintiff's claims in this action "arise from related facts or from the same transaction or series of transactions" as those in Wolf v. Escala—namely, Plaintiff's 2007 divorce and ensuing state child custody proceedings—they are barred by the doctrine. DiTrolio v. Antiles, 142 N.J. 253, 267 (1995).